# IN THE UNITED STATES DISTRICT COURT
# OF THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DANIELLE WHATLEY,<br><br>               Plaintiff,<br><br>v.<br><br>CREST FINANCIAL, INC.;<br>DOES 1-10, inclusive,<br><br>               Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

1. "Robocalls" are the #1 consumer complaint in America today.

2. In 2016, there were almost 4,000,000 complaint reported to the Federal Consumer Commission (FCC) and the Federal Trade Commission (FTC) concerning Robocalls – 3,875,627 to be exact.[1] In 2015 and 2014, the robocalls complaints reached 2,636,477 and 1,949,603, respectively.[2] Its is

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government- Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers*

1

important to recognize there merely reflect the number of the individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

4. Plaintiff, DANIELLE WHATLEY, alleges Defendant, CREST FINANCIAL INC., robocalled her more than fifty (50) times in a 5-month period in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Georgia Fair Business Practices Act, O.C.G.A § 10-1-391 *et seq*. ("FBPA").

5. Robocalls are very inexpensive to make. As was noted in a Senate hearing on

---

*Against Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

7. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Because this case arises under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*, jurisdiction of this Court arises under 28 U.S.C. § 1331, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

10. Venue is proper in this Court because a substantial part of the claim arose in Georgia, and Defendants "reside" in Georgia, as that term is used in 28 U.S.C. § 1391.

11. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

## **PARTIES**

12. Plaintiff, DANIELLE WHATLEY, is a natural person who resides in Evens, Georgia.

13. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

14. Defendant, CREST FINANCIAL, INC., is a corporation organized under the law of the state of Utah. (Hereinafter said defendant is referred to as "Crest.")

15. Defendants principal place of business is located at 61 W 13490 S DRAPER, UT 84020, and which conducts business in the State of Georgia.

16. CREST transacts business in this state and county, *but is not currently registered with the Georgia Secretary of State*. (*Emphasis added*).

17. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (360) 721-5567, and was the called party and recipient of Defendant's calls.

18. CREST intentionally harassed and abused Plaintiff on numerous occasions by calling or texting several times during one day, and on back-to-back days, with such frequency as can be reasonably expected to harass.

19. CREST has numerous clients, customers, and contacts within the Northern

District of Georgia and regularly transacts business there.

20. Plaintiff allegedly incurred an unsecured debt the primary purpose of which was to purchase home furnishing primarily used for Ms. Whatley's personal, family, or household purposes (the "Alleged Debt").

## FACTUAL ALLEGATIONS

21. Over the year preceding the filing of this action, CREST, its predecessors in interest and/or vendors have made numerous telephone calls to Plaintiff's cellular telephone number, (360) 721-5567, in an attempt to collect on the Alleged Debt.

22. The calls originated from but are not limited to (855)282-7378 a number which CREST owns, controls, and makes calls from.

23. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that she knew it was an auto-dialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came

6

on the line and/or she received prerecorded messages from Defendant. (Aff. Whatley ¶4).

24. Defendant placed an exorbitant number of automated calls and text messages to Plaintiff's cellular telephone, so numerous that Ms. Whatley would occasionally turn her phone off so as not to be interrupted during daily tasks.

25. On or about February 8th 2017, Plaintiff answered a call to her aforementioned cellular telephone, met with an automated message, held the line and was eventually connected to a live agent/representative of Defendant and demanded for them to stop calling her. Defendant's agent/representative informed Plaintiff the calls would not stop and would continue. (Aff. Whatley ¶6).

26. On or about June 12, 2017, Plaintiff again demanded that the calls stop when she spoke to an agent/representative of Defendant. (Aff. Whatley ¶7).

27. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her cellular telephone.

28. Each of the Plaintiff's demands for the harassment to end was ignored. (Aff. Whatley ¶9).

29. From Feb 8th of 2017 through the filing of this complaint, Defendant has placed approximately fifty (50) automated calls and text messages to

Plaintiff's aforementioned cellular telephone. Due to the tremendous volume of calls Plaintiff received to her cellular telephone, she was not able to properly catalogue each and every call, however attached hereto as "Exhibit A" is a *small sampling* of some of the automated calls. (*Emphasis Added*).

30. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

31. Defendant made at least one call to (360) 721-5567. (Ex. A)

32. Defendant made at least one call to (360) 721-5567 using an "automatic telephone dialing system" (ATDS). (Ex. A)

33. Defendant made at least ten (10) calls to (360) 721-5567. (Ex. A)

34. Defendant made at least ten (10) calls to (360) 721-5567 using an ATDS. (Ex. A)

35. Defendant made at least twenty-five (25) calls to (360) 721-5567. (Ex. A)

36. Defendant made at twenty-five (25) calls to (360) 721-5567 using an ATDS. (Ex. A)

37. Defendant made at least Fifty (50) calls to (360) 721-5567. (Ex. A)

38. Defendant made at least Fifty (50) calls to (360) 721-5567 using an ATDS. (Ex. A)

39. Defendant made at least Seventy-Five (75) calls to (360) 721-5567. (Ex. A)

40. Defendant made at least Seventy-Five (75) calls to (360) 721-5567 using an

ATDS. (Ex. A)

41. Defendant made at least One Hundred (100) calls to (360) 721-5567. (Ex. A)

42. Defendant made at least One Hundred (100) calls to (360) 721-5567 using an ATDS. (Ex. A)

43. Defendant made at least One Hundred and Fifty (150) calls to (360) 721-5567. (Ex. A)

44. Defendant made at least One Hundred and Fifty (150) calls to (360) 721-5567 using an ATDS. (Ex. A)

45. Defendant made at least Two Hundred (200) calls to (360) 721-5567. (Ex. B)

46. Defendant made at least Two Hundred (200) calls to (360) 721-5567 using an ATDS. (Ex. A)

47. Defendant made at least Two Hundred and Fifty (250) calls to (360) 721-5567. (Ex. A)

48. Defendant made at least Two Hundred and Fifty (250) calls to (360) 721-5567 using an ATDS. (Ex. A)

49. Each call the Defendant made to Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

50. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to

9

dial such numbers as specified by 47 U.S.C § 227(a)(1).

51. Furthermore, many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

52. Plaintiff repeatedly requested the Defendant to stop calling her cell phone, however, the Defendant continued to make calls.

53. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored. (Aff. Whatley).

54. Defendant has recorded at least one conversation with the Plaintiff.

55. Defendant has recorded numerous conversations with the Plaintiff.

56. Defendant has made approximately fifty (50) calls to Plaintiff's telephone number (360) 721-5567 from February 8m 2017 until today, which will be established exactly once Defendant turns over their dialer records.

57. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

58. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

59. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

60. Defendant's aggravating and annoying phone calls trespassed upon and

interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

61. Defendant's phone calls harmed Plaintiff by wasting her time.

62. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

63. CREST has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or CREST to remove the number.

64. CREST corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to CREST. they do not wish to be called.

65. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

66. In the last 3 years, the Defendant has had 156 complaints reported to the Better Business Bureau (BBB), of which 83 of those complaints are classified as

being related to "Billing/Collection Issues."[3]

67. CREST has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

68. Not one of CREST's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

69. CREST willfully and/or knowingly violated the TCPA with respect to Plaintiff.

70. Each and every call placed without express consent by Crest to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

71. Each and every call placed without express consent by Crest to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

72. Crest's call center(s) and dialing infrastructure have the capacity to store a database of telephone numbers.

73. Crest's call center(s) and dialing infrastructure have the capacity to dial telephone numbers from a stored list either at random or in some sequence.

74. Crest's has continued calling Plaintiff and other consumers' cellular telephone

---

[3] https://www.bbb.org/utah/business-reviews/loans/crest-financial-services-llc-in-draper-ut-6002192/reviews-and-complaints?section=complaints

numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling despite the Eleventh Circuit's recent ruling in <u>Osorio v. State Farm Bank</u>, FSB, 746 F. 3d 1242 (11th Cir. 2014).

75. The telephone calls were not initiated by accident or mistake.

76. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way stress, anxiety, nervousness, embarrassment, distress, and aggravation. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, waste of Plaintiff's time, causing the risk of personal injury due to distraction, and trespass upon Plaintiff's chattels. All of the above-mentioned were caused by, and/or directly related to, Defendant's attempts to collect a debt from Plaintiff through the use of automated/predictive dialing technology.

77. On August 4, 2017 counsel issued a demand letter in compliance with the Georgia Fair Business Practices Act's *ante litem* requirement informing Defendants of Plaintiff's representation and demand to the alleged claims. (Ex. B).

78. The letter was dispatched using United States Postal Service ("USPS") Certified mail with tracking *7016 0600 0000 6010 9785*. (Ex. C).

79. To date, all administrative remedies have been exhausted.

## COUNT I
## VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 27 U.S.C. § 227 *et seq.*

80. Plaintiff incorporates by reference all of the above paragraphs of this complaint as the fully stated therein.

81. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to being called by them using an ATDS or pre- recorded voice.

82. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded voice.

83. Defendant, CREST, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

84. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA and $1,500.00 in damages for teach intentional violation.

85. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, CREST, from violating the TCPA in the future.

## COUNT II
## VIOLATIONS OF
## THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-391, *et seq.*

86. The Plaintiff incorporates by all reference all of the above paragraphs of this complaint as the fully stated therein.

87. The Plaintiff is a "consumer" as a term is defined by O.C.G.A. § 10-1-392(6).

88. The Plaintiff incurred debt as a result of engaging into "[c]onsumer transactions" as a term is defined by O.C.G.A. § 10-1-392(10).

89. The Defendant used unfair or deceptive acts to collect the debt incurred in commerce, in violation of O.C.G.A. § 10-1-393(a).

90. The Plaintiff suffered mental anguish, emotional distress and in an amount to be proven at trial.

91. Defendants' failure to comply with these provisions constitutes an unfair or deceptive act buy under O.C.G.A. § 10-1-393(a) and, as such, the Plaintiff is entitled to damages plus reasonable attorney's fees.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so treble and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## TRIAL BY JURY DEMAND ON ALL COUNTS

Dated: 09/04/2017

  Respectfully submitted,

    */s/ David A. Prado*
    By: David A. Prado Esq.
    Attorney Bar No. 876286
    Attorney for Plaintiff
    MacPherson & Prado, LP.
    2265 Roswell Road, Suite 100
    Marietta, GA 30062
    OFFICE: (470) 353-8870
    MOBILE: (770) 597-3269
    E-mail: Dprado@GeorgiaCollectionDefense.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

Respectfully submitted,

*/s/ David A. Prado*
By: David A. Prado Esq.
Attorney Bar No. 876286
Attorney for Plaintiff
MacPherson & Prado, LP.
2265 Roswell Road, Suite 100
Marietta, GA 30062
OFFICE: (470) 353-8870
MOBILE: (770) 597-3269
E-mail: Dprado@GeorgiaCollectionDefense.com